State of OKLAHOMA, ex rel. OFFICE OF STATE FINANCE, Plaintiff–Appellant,

v.

UNITED STATES of America; Tommy G. Thompson, Secretary of Health and Human Services, ex rel. Department of Health and Human Services, Defendants–Appellees.

No. 01–6291.

United States Court of Appeals, Tenth Circuit.

June 12, 2002.

Marc Edwards (William S. Price, Robert N. Sheets, and Scott E. Williams with him on the briefs) of Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City, OK, for Plaintiff–Appellant.

Christine N. Kohl, Attorney, Appellate Staff (Robert D. McCallum, Jr., Assistant Attorney General, and Barbara C. Biddle, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington DC; and Robert G. McCampbell, United States Attorney, Oklahoma City, OK, with her on the brief), for Defendants–Appellees.

Before LUCERO, McKAY, and MURPHY, Circuit Judges.

McKAY, Circuit Judge.

Oklahoma appeals the Western District of Oklahoma's final order and judgment upholding a decision issued by the Departmental Appeals Board (DAB) of the United States Department of Health and Human Services (HHS). The DAB decision upheld the HHS' disallowance of $7,426,672 of federal funds paid to the state.

## I. Background

Oklahoma employs several state workers whose duties include the administration of various federal programs. Oklahoma and its various state agencies are entitled to reimbursement for the federal government's proportionate share of salaries and fringe benefits attributable to federal work being performed by state employees as long as the costs of implementing federal programs are legitimate, necessary, and allowable. Because an understanding of the underlying facts is essential for the proper disposition of this appeal, we provide a brief overview of the Oklahoma State Employees Benefits Act (Benefits Act), the Oklahoma State and Education Employees Group Insurance Board (OSEEGIB), the Office of Management and Budget Circular A–87 (OMB A–87), and the procedural history of this case.

Oklahoma's Benefit Act provides for a benefit allowance to be paid to state employees. The amount of the benefit allowance is set by statute. State employees use the benefit allowance to purchase a variety of insurance benefits including health, life, and disability. Employees select the amount, types of coverages, and providers they prefer. If an employee selects a level of coverage with a price in excess of the benefit allowance, the employee is charged the difference. Conversely, if an employee selects coverage costing less than the benefit allowance, the unspent amount is forwarded to the employee as gross income.

With respect to health care coverage, employees have three basic choices. Employees can choose to receive unused portions of the benefit allowance as gross income, secure insurance from a number of private health care providers, or elect to be insured by OSEEGIB. The State then forwards the appropriate monies to the various providers as directed by the employee.

OSEEGIB is a creation of Oklahoma statute. Basically, OSEEGIB is a state-run, self-insured provider of healthcare benefits. State employees are just one group of employees eligible for coverage through OSEEGIB. Employees of school districts, local governmental entities, and other groups are also eligible for health care coverage with OSEEGIB. OSEEGIB competes with various private insurers as a potential recipient of benefit allowance monies. Premiums from employees that elect OSEEGIB as their healthcare provider are deposited into the OSEEGIB reserve fund. This reserve fund pays for medical claims and the expenses of administering OSEEGIB.

In 1996, Oklahoma passed 74 O.S. § 1310 directing state agencies to forward premiums usually sent to OSEEGIB's reserve fund to the State Employees Group Insurance Clearing Fund. The legislature further directed that the first $31.5 million paid into the Clearing Fund was to be distributed to the Oklahoma State Regents for Higher Education. Monies received after the initial $31.5 million were to be deposited into the Reserve Fund. Oklahoma concedes that the $31.5 million which normally would have been deposited into the Reserve Fund was diverted to the Clearing Fund as mandated by statute. These funds were then used for purposes

of higher education rather than for health-care expenditures.

■ OMB A–87 sets forth the parameters governing a state's entitlement to federal reimbursement for the state's costs of implementing federal programs. It defines "cost" as "an amount as determined on a cash, accrual, or other basis acceptable to the Federal awarding or cognizant agency. It does not include transfers to a general or similar fund." Aplt.App. at 86. Costs must also be necessary and reasonable, allocable to federal awards, and be accorded consistent treatment and adequately documented. *See id.* at 87–88. Employee compensation and fringe benefits are specifically included as permissible costs entitled to reimbursement from the federal government. *See id.* at 94–95.

HHS, by letter, announced that it was disallowing all Oklahoma State agency claims for reimbursements related to OSEEGIB contributions paid into the Clearing Fund. Ultimately, HHS disallowed $7,138,280 of federal funds previously paid to the State. Oklahoma appealed this decision to the DAB. DAB upheld the disallowance, ruling that the monies had been awarded for insurance premiums but had been spent for other purposes. The DAB determined that Oklahoma's conduct violated the principle that federal funds must be applied to the objective for which the appropriations were made—in this case, health insurance. Oklahoma challenged DAB decision number 1668 in the United States District Court for the Western District of Oklahoma. The district court upheld the DAB's decision. Oklahoma appeals to this court.

## II. Standard of Review

■ At issue in this case is whether Oklahoma's diversion of funds from OSEEGIB's Reserve Fund to the Clearing Fund to be used for purposes of higher education violates OMB A–87's mandate concerning state reimbursement for costs incurred in administering federal programs. We review pursuant to the provisions of the Administrative Procedures Act. We must uphold the district court's affirmance of final agency action unless the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1996). We may reverse the district court's decision if "unsupported by substantial evidence...." *Id.* at § 706(2)(E). When the decision involves the interpretation of an agency's own regulations, the agency's interpretation is given "substantial deference." *Thomas Jefferson University v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).

## III. Analysis

We note that HHS is not arguing that the amount that it has reimbursed Oklahoma for healthcare benefits is unreasonable. Neither is HHS challenging any payments made directly to State employees or payments made to private healthcare providers. HHS only challenges payments for OSEEGIB benefits diverted from OSEEGIB's Reserve Fund to the Clearing Fund.

Oklahoma argues that HHS got exactly what it bargained for because the record is devoid of any evidence that any State employee failed to receive the full amount of healthcare benefits purchased. All claims have been paid. Furthermore, because HHS is not contending that the actual amount paid for the healthcare benefits is unreasonable, Oklahoma argues that HHS may not contest the method in which Oklahoma handled OSEEGIB's premiums. Oklahoma further argues that once the benefit allowance is given to the employee, all funds lose their federal character. Because the funds have lost their federal

character, HHS cannot contest Oklahoma's use of the contested funds for higher education purposes.

HHS insists that because OSEEGIB is a self-insurer run by the State the funds do not lose their federal character until the funds have been spent for healthcare related purposes (by paying claims or OSEEGIB's administration expenses). The Agency argues that the diversion of funds from OSEEGIB's reserves will lead to higher premiums and ultimately to increased costs Oklahoma will attempt to recover from HHS. Furthermore, the use of funds for higher education purposes violates the basic principle envisioned by OMB A–87 that federal funds must be applied to the objective for which the appropriations were made.

While determining the point at which federal funds cease to be federal funds is an intriguing issue, the resolution of that issue is unnecessary for the disposition of this appeal. The correct answer is much more simple. OMB A–87's definition of "cost" is singularly fatal to Oklahoma's appeal.

OMB A–87's definition of "cost" excludes "transfers to a general or similar fund." Aplt. App. at 86. Federal monies forwarded to Oklahoma's Clearing Fund represent unrecoverable "transfers to a general or similar fund." Thus, there is no need to ascertain when federal money loses its federal nature, or even if the monies Oklahoma is attempting to be reimbursed for are necessary and reasonable expenditures. The money diverted to the Clearing Fund fails to qualify as a reimbursable cost in the first instance. Although the district court did not cite OMB A–87's definition of cost as a basis for its decision, it is well established that "[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval,* 29 F.3d 537, 542 n. 6 (10th Cir.1994) (quotations omitted).

The district court's decision was not arbitrary, capricious, an abuse of discretion, or not in accordance with the law. Furthermore, the district court's decision is supported by substantial evidence. Therefore, we affirm the district court's decision in all respects.

**AFFIRMED.**